MARY ANNA GILMAN, APPELLANT, v. CLINTON EMIL RIIS, APPELLEE.

209 N. W. 2d 173

Filed June 29, 1973. No. 38705.

Van Steenberg, Brower & Chaloupka, for appellant.

Leo M. Bayer, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is an appeal from an order denying plaintiff-appellant's motion for a change in the custody and control of Victoria and Joyce, minor daughters of the parties, now 6 and 4 years of age, respectively. We affirm the judgment and order of the District Court.

The defendant father, Clinton Riis, was granted an absolute divorce from the plaintiff, Mary Anna Riis, on November 4, 1970, on the grounds of adultery. The District Court, in the decree granting the divorce, specifically found that Mary Anna was not a fit, suitable, or proper person to have the care and custody of Victoria and Joyce. The District Court also, in granting the custody of the daughters to Clinton, found that Clinton was a fit, suitable, and proper person to have the care, custody, and control of said children. This decree became final and no appeal was taken by Mary Anna. The basic issue presented by the record in this case is that Mary Anna has now remarried, claims that her own circumstances have changed, that she has rehabilitated herself, and is now entitled to the custody of her two daughters.

The record in this case reveals an exhaustive and able exploration by both counsel of all the minute details of the lives of the parties subsequent to the time of the decree and their interrelation with the care, condition, and welfare of the two children. We point out that this court does not retry the issue of custody as an original matter. We review only the discretion of the District Court in denying a *change* in the custody of children

based upon a change of circumstances and the paramount and overriding consideration of what is for the best interests of these two minor daughters of the parties. This case is controlled by our holdings in Bennett v. Bennett (1973), 189 Neb. 654, 204 N. W. 2d 379, and our recently released cases of Scripter v. Scripter, *ante* p. 317, 208 N. W. 2d 85, and Flesher v. Flesher, *ante* p. 359, 208 N. W. 2d 677. In these cases we have reaffirmed our recent holdings by stating: "A decree fixing custody of minor children will not be modified unless there has been a change in circumstances indicating that the person having custody is unfit for that purpose or that the best interests of the children require such action. * * * The discretion of the trial court with respect to changing the custody of minor children is subject to review, but the determination of the court will not ordinarily be disturbed unless there is a clear abuse of discretion or it is clearly against the weight of the evidence."

Mary Anna persuasively argues that she has rehabilitated herself, has now remarried, and will be able to give the children a stable home environment and to give them the care, devotion, and love that they are entitled to from their mother. There was conflicting evidence on this issue. It appears that Mary Anna gave birth to an illegitimate child on July 20, 1970. It appears that Mary Anna and one Gilman were married May 10, 1971, about a month after he was divorced from his second wife and about 6 days after the Riis divorce became final. Gilman was a truck driver. He has one child by his first marriage, about 11 years of age, and three children by his second marriage, whose ages are 7, 5, and 2 years of age. The evidence supports the finding that he does not support any of these children. Mary Anna herself testified that Gilman was not supporting any of these children by his prior marriages. There is much other evidence in the record to the effect that Mary Anna would not give the children proper medical care; that she did not comply with the visitation rights granted

her by the court in the original decree; and other evidence as to the interchange between Mary Anna and Lela Riis, the paternal grandmother in whose actual care and custody the children were during the period of time that Clinton was in Alaska. There is considerable favorable testimony as to a change in the attitude and character on the part of Mary Anna and to the effect that she has rehabilitated herself and is willing to accept the full mature responsibility of caring for her two daughters and devoting the care and attention to them that a mother should.

But, as we have pointed out, the issue in this case is not the determination as an original matter as to whether the children should go to the mother on the assumption that her conduct now makes her a proper custodian for the children. The only real question in this case is whether the trial court, who saw and heard the witnesses and observed the parties, abused its discretion in refusing to change the custody of the children. Under the rule of law that we have announced above, the evidence falls far short of showing that Clinton is an unfit custodian for the two minor daughters. The main thrust of the plaintiff's argument concerns Clinton's actions and departure to Alaska, his job as a pilot, and leaving the children with his father and mother, Lela and William Riis. But the evidence strongly supports that the children, while in the custody of the paternal grandparents, were given love and affection, proper medical attention, were in good health, were given religious training and all the normal childhood attention that children deserve, such as swimming lessons, going on picnics, fishing trips, to the park, and there is other evidence that these two girls were shown great affection by the Riis family. The record shows that the trial court carefully explored and considered the pertinent evidence in this case. He had before him the report of the District Court probation officer about the William Riis farm and the condition of the children. This report is very favor-

able and showed that the children were well dressed and groomed, were conversant and articulate, expressed themselves unusually well, were well trained, and appeared to be in fine health, and there was no evidence of physical abuse. The evidence further showed that Clinton paid his mother and father $2,900 for the support of the children from February 1971 to August 7, 1972. He bought clothing for them, sent them Christmas cards and presents, sent them letters and cards at least every 2 weeks, remembered them on holidays, made numerous phone calls from Alaska to talk to them, and when he returned home for quite numerous visits he devoted all his time to his children, took them for swimming lessons, to Sunday School, took them fishing, played with them, and performed all the other normal acts of a loving father.

The discretion of a trial court in this situation is necessarily subjective and must be founded to a significant extent upon his observation of the parties and the review of all the minute details that affect the general welfare and the best interests of the children. It also must necessarily be prospective in nature. A change of custody hearing should not be converted into a punitive expedition that small errors in judgment and a hindsight determination about more care and attention could have been given than was. The attack upon the custody of the children with the William Riis family, the paternal grandmother and grandfather, that the plaintiff makes was largely answered by the persuasive evidence before the court as to the prospective change in Clinton's circumstances. Clinton is now married to Linda and has been since February 11, 1972. The evidence is that they are happily married. Linda is 24 years of age, has never been married before, she has been with the two daughters and she loves the children, and they love her. She is a Sunday School teacher, is a high school graduate, and a graduate of the Seattle Dental Assistant Technicians School and is now a dental

technician. She is willing to take care of the children and will quit her present job. Linda has taken care of her paralyzed grandfather and has taken care of her younger sisters when she was in high school, and she has done extensive baby sitting. The record reveals that the trial judge was greatly impressed by Linda. Their new home is in Homer, Alaska, has weather that is milder than it is in Alliance, Nebraska, and has a population of about 2,500, a new school, two doctors, a dentist, an airport, hospital, and several churches, and the other usual conveniences of modern, comfortable, and secure living conditions. Clinton has a home which consists of two bedroms, completely furnished, carpeted, washer and dryer, utility room, bathroom and living room, and a furnished kitchen.

We belabor the record no further. Even on the assumption that Mary Anna has rehabilitated herself, the evidence in this case is far short of showing an abuse of the trial court's discretion in continuing the custody of these two daughters in the defendant. There is no evidence to support a finding of the defendant's unfitness to retain custody. From the circumstances we have recited the trial court's finding that it is in the best interests of the children to remain with their father is not only supported by the evidence but a contrary decision would be against the weight of the evidence and an abuse of discretion. Children are not chattels. A parent found unfit for custody should not, by the mere passage of time and without further misconduct, be able to change child custody provisions in a divorce decree in the absence of clear and convincing evidence that the custodial parent is failing to provide proper and reasonable care for the children and that the best interests and welfare of the children are adversely affected. Stability is a paramount consideration in the welfare, health, and proper training of children of tender years. It is not in the best interests of children of tender years to unnecessarily change custody and bandy them back and

forth in a custody action between recriminatory parents. Goodman v. Goodman, 180 Neb. 83, 141 N. W. 2d 445; Scripter v. Scripter, *supra*.

The judgment and order of the District Court are correct and are affirmed.

AFFIRMED.